George Lipkin, Appellee, v. Ralph A. Burnstine and Chicago Raburn Corporation, an Illinois Corporation, Appellants.

Gen. No. 47,520.

First District, Third Division.

July 3, 1958.

Released for publication October 2, 1958.

510

Albert E. Jenner, Jr., Philip W. Tone, and Thomas W. McNamara, of Chicago (Thompson, Raymond, Mayer, Jenner & Bloomstein, of counsel) for appellants.

Spatuzza, Yedor & Buckley, and Theodore C. Weinberg, of Chicago (Bernard Yedor, of counsel) for appellee.

JUSTICE BURKE delivered the opinion of the court.

This is an interlocutory appeal from a temporary injunction order entered on notice after answer and without evidence, restraining the lessors, defendants, from confessing judgment or taking any other legal action against plaintiff (1) to collect rents of $2,200 per month due and unpaid from and after April 1, 1958, under a written real estate lease or (2) to collect $12,900 defendants claim to be due them as the unpaid balance, accelerated by default, under an installment note given for the purchase price of certain equipment. The order also directs that pending final hearing the plaintiff, lessee, deposit with the Clerk the

monthly rent payments and monthly payments on the installment note as they become due.

Plaintiff is the lessee of two buildings known as 5045-57 Broadway, Chicago, which he uses for the purpose of operating an automobile sales agency with repair and storage facilities. The defendants are the lessor-owners of the premises. Prior to the lease defendants occupied the premises at 5045 Broadway as an automobile sales agency with service and repair facilities from 1941 until October 31, 1956, and they occupied the premises at 5057 Broadway as a used car salesroom and new car storage area from January 1, 1956 until October 31, 1956. On October 26, 1956, the parties entered into a lease whereby the two buildings were leased to plaintiff for a term of five years commencing November 1, 1956, and, unless renewed, expiring on October 31, 1961, at a rental of $132,000 payable at the rate of $2,200 per month. Paragraph 2 of the lease provides, in part, as follows:

"Lessee has examined and knows the condition of said premises, and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof, have been made by the Lessor or his agent prior to or at the execution of this lease, that are not herein expressed or endorsed hereon; Lessee will keep said premises including all appurtenances, in good repair . . . and will without injury to the roof, remove all snow and ice from the same when necessary . . . Upon receipt of written request from Lessee, the Lessor shall, during the term of this lease, make any and all necessary repairs to the roof and exterior walls of the premises demised herein . . ."

Paragraph 13 contains a standard confession of judgment clause giving the lessor the right to confess judgment upon default in the payment of rent. Paragraph 16 provides for a security deposit with lessors of the

sum of $13,200 as security for the full and faithful performance by the lessee of all the terms, covenants and conditions of the lease. Plaintiff paid the rent to and including March 31, 1958, and made no payments thereafter.

On March 31, 1958, plaintiff filed his complaint in equity to declare the lease invalid and for other relief. The material allegations of the complaint, apart from the undisputed facts stated above, are in substance as follows: (a) Plaintiff spent several thousand dollars decorating the interior of the premises upon taking possession. (b) Defendants had occupied the premises for many years prior to the lease as an automobile sales agency and were aware that the roof and exterior walls leaked large quantities of water during and after every rainfall, causing plaster to fall and causing flooding which resulted in damage to cars, parts, supplies and interior decorations. Defendants remained silent about these conditions during negotiations and while plaintiff was decorating. Defendants' silence constituted a fraudulent concealment of material facts, knowledge of which by plaintiff would have prevented him from entering into the lease. (c) Plaintiff notified defendants of the condition of the premises immediately after the first rainfall and has made repeated demands thereafter for defendants to take corrective measures but defendants have failed to remedy the defects although promising to do so. (d) Plaintiff has redecorated on several occasions at great expense, but each succeeding rainfall returns the premises to their damaged condition. (e) The physical condition of the premises and the lessor's failure to repair have rendered the premises untenantable for the purposes for which they were leased and constitutes a constructive eviction. (f) Plaintiff should be allowed a reasonable time to vacate the premises. (g) Plaintiff had paid the rent, and has "paid an addi-

513

tional . . . $300 . . . per month for the rental of certain equipment owned by the defendants," through March, 1958. (h) The estimated cost of repairing the premises is too great for plaintiff to pay and recoup from the rent. Plaintiff is informed and believes that defendants are in no financial position to repair the premises, and consequently the rental should be paid to the Clerk of the court to be disbursed to the persons found entitled thereto after a full hearing. (i) If plaintiff is not entitled to cancellation of the lease, the court should as an alternative remedy, determine and assess plaintiff's damages and order their immediate payment out of the funds held by the Clerk of the court with any balance to be paid directly by defendants. (j) Defendants should be restrained, pendente lite, from confessing judgment on the lease and from appropriating any part of the $13,200 security deposit held by them. Plaintiff requests the relief prayed for in the body of the complaint with the additional prayer that if the court determines that the premises could be made tenantable by immediate repair, the cost of such repairing should be ordered paid out of the funds on deposit with the Clerk, with those funds to stand as security for the cost of repairing.

In a verified answer the defendants specifically deny the allegations with respect to the condition of the premises; that there were any misrepresentations of any kind to the plaintiff; that the premises are untenantable; that there has been a constructive eviction; and that plaintiff has suffered any damage. Defendants aver that they have spent in excess of $8,000 improving the roof and exterior walls of the premises since the execution of the lease. Defendants also deny the allegation that plaintiff has paid $300 per month as rental for equipment owned by defendants and aver that plaintiff has paid that amount per month as installments on a contract of sale of certain equipment

·purchased by plaintiff from defendants. In addition defendants affirmatively set forth several matters of defense, which are in substance as follows: (1) The recital in Paragraph 2 of the lease that the lessee examined and knew the condition of the premises and received the same in good order and repair estops him from asserting that the premises were not in good order and repair at the time of the execution of the lease. (2) Plaintiff is barred by laches from asserting that the premises are untenantable, since he admits in his complaint that he had knowledge of the condition of the premises immediately after taking occupancy and continued to occupy the premises for 17 months without seeking to assert his alleged right of ·cancellation. (3) Plaintiff cannot remain in possession and enjoy the benefits of the premises and claim a constructive eviction. (4) Plaintiff has failed to state ·a claim upon which relief can be granted because he has not alleged that a written request to make repairs, required under Paragraph 2 of the lease, has ever been made upon the lessor. (5) Plaintiff's obligation to pay rent and defendants' obligation to make necessary repairs upon the roof and exterior walls of the premises are independent, and plaintiff has no right to have the rent deposited with the Clerk of the court pending disposition of the cause. (6) Plaintiff represented to ·defendants that repairs made to the premises by independent contractors were satisfactory and defendants, relying on this representation and with full knowledge of plaintiff, paid the independent contractors, and plaintiff consequently is estopped from now asserting that the premises are untenantable, or that defendants have breached their covenant to repair. (7) Plaintiff has breached its covenant to keep the premises in good repair and in good, tenantable and wholesome condition, and any purported damages which plaintiff allegedly has sustained are due to its

breach and not defendants. (8) Plaintiff has an adequate remedy at law.

On April 23, 1958, defendants served upon plaintiff a notice demanding payment within five days of the past due rent and stating further that plaintiff take notice that default has been made in the payment of the $300 per month installment due on the chattel mortgage installment note signed by him dated October 26, 1956, and that said payment has been due and unpaid for a period in excess of 15 days and that the balance of the principal sum, $13,200, was then due and payable. The notice also stated that both the past due rental and the unpaid balance of the installment note was demanded and that unless payment was received within five days, judgments for those amounts would be confessed against the plaintiff. Plaintiff filed a verified petition to deposit monies with the Clerk of the court and for an order enjoining defendants from confessing judgment for rent or for the unpaid balance of the installment note. In the petition plaintiff recites the filing of the complaint and re-avers some of his allegations with respect to the lease, the payment of rent, the security deposit and the condition of the premises. Plaintiff also alleges in the petition that the $300 a month payments (alleged in the complaint to have been rental on equipment) were on an installment note for $18,000 payable at the rate of $300 per month, given in payment for certain equipment purchased by plaintiff from defendants. Plaintiff further alleged that the remaining principal balance due on the chattel mortgage installment note is $12,900 and not $13,200. In the petition plaintiff states that no undue prejudice will result to defendants if the monthly rental under the lease and the monthly installment under the note are deposited with the Clerk of the court pending the trial and disposition of the matter. The prayer of the petition is for the equitable

relief which the chancellor eventually granted. The chancellor took the matter under advisement. On May 5, 1958, he gave a written opinion finding that defendants should be restrained from confessing judgment for rentals, including past due rentals, and that plaintiff should deposit the rentals with the Clerk. The chancellor was of the opinion that the notice was ineffectual to accelerate the entire remaining balance on the installment note and directed that defendants be enjoined from confessing judgment or taking other legal action to collect the unpaid balance on the note, and that plaintiff deposit $300 per month with the Clerk until "a determination is had as to defendants' right to accelerate the balance due on said note." Under an order effective nunc pro tunc as of May 5, 1958, granting the relief prayed, defendants are enjoined from confessing judgment for the rentals or the unpaid balance of the installment note or taking any other legal action during the pendency of the suit, and plaintiff is required to deposit the rental payments and amount due under the chattel mortgage note with the Clerk. Defendants are permitted to withdraw the $300 per month deposited with respect to the note, if they choose.

■ ■ Plaintiff was required to establish that he was probably entitled to succeed ultimately on the merits as a prerequisite to obtaining a preliminary injunction. Chicago Motor Coach Co. v. Budd, 346 Ill. App. 385, 390; Perry v. Eson, 8 Ill.App.2d 423, 426; Continental-Midwest Corp. v. Hotel Sherman, Inc., 13 Ill.App.2d 188. The injunction was granted on the pleadings. In the answer the defendants denied the material averments of the complaint and set up complete defenses. Also before the court was the verified petition for a temporary injunction, the factual allegations of which repeated the allegations of the complaint. No evidence was offered and no affidavits

were presented. A temporary injunction cannot be predicated solely upon the pleadings where the material factual issues are controverted and the answer raises a complete defense. Perry v. Eson, 8 Ill.App.2d 423; Moss v. Balch, 320 Ill. App. 135 (Abst.); Exchange Nat. Bank v. City of Chicago, 344 Ill. App. 124 (Abst.); Miller v. Chicago Transit Authority, 339 Ill. App. 398.

█ █ The uncontroverted facts show that the order is erroneous in enjoining defendants from collecting rents for a period when plaintiff was and is in possession of the premises. The lessor's right to receive rent continues so long as the lessee elects to remain in possession, even though the lessee may ultimately establish a right to rescind the lease, vacate the premises or obtain other relief. Goldblatt v. Sixty-Third & Halsted Realty Co., 338 Ill. App. 543, 550. The same rule applies if the lessee claims a constructive eviction without vacating the premises. In Keating v. Springer, 146 Ill. 481, the court said (496): "It would be unjust to permit the tenant to remain in possession and then escape the payment of rent by pleading a state of facts, which, though conferring a right to abandon, has been unaccompanied by the exercise of that right." See also Automobile Supply Co. v. Scene-In-Action Corp., 340 Ill. 196, 201. Plaintiff occupies the premises operating an automobile sales agency therein. He has not attempted to abandon the premises. It was error to enjoin the defendants from collecting the rentals due from the plaintiff.

█ We are of the opinion that plaintiff is barred by laches from seeking to cancel the lease on the ground that he was induced to execute the lease by fraud. The lease was executed on October 26, 1956. The plaintiff went into possession on November 1, 1956. He alleges that he was damaged by the first rainfall after he took possession of the premises. The

complaint was not filed until March 31, 1958, or 17 months after plaintiff took possession. A right of rescission must be exercised promptly. A lessee who knowingly accepts the benefits of the demised premises cannot be heard at a subsequent date to claim that he was induced to execute the lease by fraud. Jorgeson v. Hock, 234 Ill. 631; Swanson v. Fisher, 148 Ill. App. 104; Resser v. Corwin, 72 Ill. App. 625. Plaintiff does not allege that the condition of which he complains was unascertainable by reasonable inspection, or that he was prevented by defendants from inspecting the premises.

■ We are in agreement with defendants' contention that even assuming that plaintiff's pleadings show a right to recover damages, he is not entitled to injunctive relief or to have the rent deposited with the Clerk of the court. He is entitled only to recover those damages in an action at law or by way of recoupment in the lessors' action for the rent. The lessee's obligation to pay rent and the lessors' covenant to repair are independent, and a breach by the lessor of his covenant to repair does not relieve the lessee of liability for rent. Rubens v. Hill, 213 Ill. 523, 533; Cote v. Landau, 240 Ill. App. 292; Clark v. Ford, 41 Ill. App. 199. It follows that the existence of a right to damages would not entitle plaintiff to enjoin an action by defendants to collect the rent. White v. YMCA, 233 Ill. 526. In any event defendants' obligation to make repairs does not arise until a written request has been made upon them pursuant to Paragraph 2 of the lease. See Pratt, Hurst & Co., Ltd. v. Tailer, 135 App. Div. 1, 119 N. Y. S. 803.

■ The order enjoining the defendants from taking any legal action to collect the installment note given by plaintiff in payment for certain equipment purchased from the defendants is without any foundation in the record. In his petition for a tem-

porary injunction plaintiff alleged that the note was in fact given for payment of the purchase price of certain equipment and avers that the face amount of the note is $18,000. This petition further alleged that the remaining principal balance due on the chattel mortgage installment note was $12,900 and not $13,200 and asked that defendants be temporarily enjoined from confessing judgment for the unpaid balance. The chancellor held that the notice was ineffectual to accelerate the unpaid balance on the note, enjoined the defendants from taking legal action to collect that balance and directed that $300 per month be deposited with the Clerk until a determination is had as to defendants' right to accelerate the balance due on the note. The order permits the defendants to withdraw the $300 per month payment deposited with the Clerk. There is no dispute that the note is owing or that plaintiff is in default on the note. Even if defendants were to obtain judgment in the amount of $13,200, the judgment would be valid and effective as to $12,900 and invalid as to $300 only. Larson v. Lybyer, 312 Ill. App. 188, 191. It follows that the notice of acceleration was effective as to the amount actually due, assuming that a notice had been required. Even if acceleration had not occurred there would have been no basis for equitable intervention. Plaintiff had an adequate remedy at law. He could appear and interpose a defense to the action at law on the note.

Plaintiff argues the case as if no verified answer had been filed, ignoring the fact that the answer placed in issue the condition of the premises and other material facts and raised a complete defense to the complaint. It was impossible for the chancellor to determine where the truth lay from the pleadings. He could no more conclude that plaintiff would probably prove his allegations than he could conclude that defendants would probably prove their denials

and counter-averments. Plaintiff says that by depositing the monthly rentals with the Clerk he is not obtaining any direct benefit, and that by paying the money to the Clerk he is evidencing an intention to pay whatever rental might still be due if the security deposit is inadequate to cover such amount after a final determination of the cause on the merits. The fact remains, however, that the lessors are deprived of the rent while the tenant continues to occupy the premises and conduct his business therein. The only conceivable purpose in requiring that the rent be paid into court is to deprive lessors of that rent. The $13,200 security deposit is the negotiated amount which plaintiff and defendants agreed, when they executed the lease, was to stand as security for the faithful performance by the lessee of all the terms, covenants and conditions in the lease. It is obvious that crediting current rental payments against this amount destroys defendants' security for future rent payments and removes their protection against property damage.

Plaintiff asserts that the failure of defendants to repair the roof and exterior walls of the premises causes a continuing injury to him each time a rainfall occurs, and that the defendants have no apparent intention to make the necessary repairs, which leaves him in the position of having to bring an action for damage each time a rainfall occurs and his property is damaged. Plaintiff also states that he is unable to finance the cost of the necessary repairs and defendants refuse to make them, so that plaintiff is thus placed in the position of suffering continuing damages with no adequate measure of relief. To warrant interference on the ground of multiplicity of suits there must be different persons assailing the same rights and not a mere repetition of the same trespass by the same person, the same being susceptible to compensation in damages. Chicago General Ry.

521

Co. v. Chicago, B. & Q. R. Co., 181 Ill. 605; White v. YMCA, 137 Ill. App. 286, aff'd 233 Ill. 526. The case of Cragg v. Levinson, 238 Ill. 69, recognizes the general rule that equity will not interfere unless there are different persons assailing the same right, and that where the suit is between two persons only and the threat is that the same trespass will be repeated by one of the persons, there is no jurisdiction in equity. The court applied the exception to that rule that equity will take jurisdiction to enjoin a repetition of trespasses where the plaintiff's right has been established at law. In the Cragg case the defendants, by demurring to the bill, admitted plaintiff's right, which the court concluded was the equivalent of the establishment of the right at law. In the instant case plaintiff has not established his right at law and defendants have filed their verified denials of the allegations of fact on which he predicates his claim of right. Under these circumstances equity has no jurisdiction on the ground of multiplicity of suits. The rule of the Cragg case applies to trespasses. When a defendant threatens repeated trespass in violation of a right which plaintiff has established at law, equity will intervene to enjoin the trespasses because it can grant effective relief by doing so. That rule can have no application to a claim for damages for repeated violations of a contractual obligation. Equity cannot solve that problem by issuing an injunction.

For the reasons stated the order of the Superior Court of Cook County of May 12, 1958, entered nunc pro tunc effective May 5, 1958, is reversed.

Order reversed.

FRIEND, P. J. and BRYANT, J., concur.